UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

HAJRUDIN MUJANOVIC,         )
                            )
            Plaintiff,      )
                            )
       v.                   )     No.  4:12CV471 FRB
                            )
CAROLYN W. COLVIN, Acting   )
Commissioner of Social Security,[1] )
                            )
            Defendant.      )


## MEMORANDUM AND ORDER

This cause is before the Court on plaintiff's appeal of an adverse ruling of the Social Security Administration.  All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

### I.  Procedural History

On September 23, 2009, the Social Security Administration denied plaintiff Hajrudin Mujanovic's application for Disability Insurance Benefits filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.; and application for Supplemental Security Income filed pursuant to Title XVI of the Act, 42 U.S.C. §§ 1381, et seq., in which plaintiff claimed he became disabled on February 15, 2009.  (Tr. 96, 97, 98-99, 100-04,

_____

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is therefore automatically substituted for former Commissioner Michael J. Astrue as defendant in this cause of action.

161-67.)   At plaintiff's request, a hearing was held before an
Administrative Law Judge (ALJ) on June 3, 2010, at which plaintiff,
plaintiff's sister and a vocational expert testified. (Tr. 50-95.)
On October 15, 2010, the ALJ denied plaintiff's claims for benefits
finding plaintiff able to perform his past relevant work as an
office cleaner, envelope stuffer and chair assembler. (Tr. 13-24.)
On February 13, 2012, the Appeals Council denied plaintiff's
request for review of the ALJ's decision.  (Tr. 1-4.)  The ALJ's
decision thus stands as the final decision of the Commissioner.  42
U.S.C. § 405(g).

Plaintiff now seeks review of the Commissioner's final
decision arguing that the ALJ's decision is not supported by
substantial evidence on the record as a whole.  Specifically,
plaintiff claims that the ALJ's determination as to plaintiff's
residual functional capacity (RFC) is not supported by substantial
evidence on the record as a whole inasmuch as the ALJ improperly
relied on the opinion of a non-medical source to find plaintiff not
disabled; failed to properly consider evidence from Dale Sieben,
LCSW, from whom plaintiff received psychotherapy; and failed to
properly consider evidence obtained from plaintiff's sister.
Plaintiff also claims that because the hypothetical question posed
to the vocational expert was based upon a flawed RFC determination,
the ALJ's reliance on the expert's testimony to find plaintiff not
disabled was error.  Plaintiff asks the Court to reverse the

decision of the Commissioner and award benefits.

## II.  Relevant Background

Evidence before the ALJ shows that plaintiff, a Bosnian refugee, came to the United States when he was twenty years of age. Plaintiff barely understands the English language.  Testimony was adduced at the evidentiary hearing with the assistance of an interpreter.  As of the hearing date, June 3, 2010, plaintiff had been in the United States for over fourteen years.  Plaintiff completed the eighth grade in Bosnia, but left school due to the Bosnian War.  Plaintiff testified at the hearing that, since being in the United States, he has worked as an over-the-road truck driver, a machine operator at a plastics factory, a baker, a chair assembler, an envelope stuffer, and an office cleaner.  (Tr. 57-64.)

Medical records before the ALJ show that plaintiff was admitted to the emergency room at St. Louis University Hospital on May 30, 2009, after having experienced a seizure.  Plaintiff was subsequently diagnosed with epilepsy/seizure disorder and treated with medications, including Dilantin.  Plaintiff's last reported seizure occurred in July 2009, although plaintiff subsequently reported having frequent headaches, dizzy spells and brief visual disturbances.  In December 2009 and March 2010, plaintiff's treating physician, Dr. David Glick, noted plaintiff's seizure disorder to be stable with Dilantin.  (Tr. 220-316, 319-23, 334-36,

340, 349.)

On February 3, 2010, Dr. Glick referred plaintiff to Behavioral Health for individual psychotherapy in response to plaintiff's recent complaints of increased stress, anger and depressed mood. Citalopram was prescribed. From March to June 2010, plaintiff met with Dale Sieben, a licensed clinical social worker (LCSW) at Behavioral Health on four occasions, during which time Mr. Sieben noted plaintiff to exhibit symptoms of depression with irregular sleep patterns, increased worries, decreased energy and concentration, and decreased appetite. Mr. Sieben determined initially that plaintiff also suffered from anxiety, but ultimately determined plaintiff to suffer from post-traumatic stress disorder (PTSD). On June 9, 2010, plaintiff reported to Mr. Sieben that he was experiencing an increase in nightmares relating to his experiences in Bosnia. On this date, Mr. Sieben assigned a Global Assessment of Functioning (GAF) score of 50.[2] (Tr. 335-42, 346-48, 352.)

Plaintiff submitted additional evidence to the Appeals Council subsequent to the ALJ's adverse decision. (Tr. 5-10, 25-46.) Although the Commissioner avers in her brief that such

---

[2]A GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health/illness." Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed. 2000). A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

-4-

evidence was considered by the Appeals Council (Doc. #22 at p. 2), the Notice of Appeals Council Action fails to include any reference to such evidence as being considered (Tr. 1-4). Such additional evidence shows the following:

Plaintiff visited Mr. Sieben in August and October 2010 and reported having continued nightmares, including nightmares which were "bloody." Plaintiff reported that he had received medication from Dr. Glick for anxiety which had helped a little. Plaintiff was diagnosed with major depressive disorder-recurrent and PTSD. (Tr. 25, 28.)

On October 18, 2010, plaintiff was referred to Kim Osmanagic, a trauma counselor with B.I.A.S. (Bi-Lingual International Assistant Services) and was subsequently enrolled in the Survivor Project through CANA (Care Access to New Americans) inasmuch as he was a survivor of torture during the war in Bosnia. (Tr. 27, 31-39.)

On April 8, 2011, plaintiff reported to Ms. Osmanagic that he experienced nightmares three times a week, had intrusive memories of the war, experienced depression and anxiety, was withdrawn, lacked motivation, and felt overwhelmed and hopeless. Plaintiff reported that he took medication for seizures and for anxiety. Ms. Osmanagic noted plaintiff's mood to be depressed, apathetic and hopeless. Plaintiff's affect was noted to be flat, constricted and low. Plaintiff's intelligence and judgment were

noted to be normal.  Upon administration of the assessment tools
Mind Over Mood and the PTSD Scale, Ms. Osmanagic diagnosed
plaintiff with chronic PTSD and assigned a GAF score of 52.[3]  Ms.
Osmanagic recommended that plaintiff undergo weekly individual
counseling.  (Tr. 40-44.)

On August 20, 2011, Ms. Osmanagic completed a Mental RFC
Questionnaire (Tr. 5-9) in which she reported having had weekly
counseling sessions with plaintiff since February 2011.  Ms.
Osmanagic noted plaintiff's diagnosis to be PTSD and that plaintiff
had a GAF score of 52.  Ms. Osmanagic reported that weekly
counseling had been only mildly effective for plaintiff's
condition.  Ms. Osmanagic reported plaintiff's medications to be
Phenytoin and Citalopram as prescribed by Dr. Glick.  Ms. Osmanagic
reported that plaintiff exhibited the following signs and symptoms
of his mental impairment:  pervasive loss of interest in almost all
activities; appetite disturbance; decreased energy; blunt, flat or
inappropriate affect; feelings of guilt or worthlessness;
generalized persistent anxiety; mood disturbance; difficulty
thinking or concentrating; recurrent and intrusive recollections of
a traumatic experience, which are a source of marked distress;
pathological dependence; change in personality; paranoid thinking;

---

[3]A GAF score of 51 to 60 indicates moderate symptoms (e.g.,
flat affect and circumstantial speech, occasional panic attacks) or
moderate difficulty in social, occupational, or school functioning
(e.g., few friends, conflicts with peers or co-workers).
Diagnostic and Statistical Manual of Mental Disorders, Text
Revision 34 (4th ed. 2000).

seclusiveness; emotional withdrawal or isolation; hallucinations or delusions; vigilance and scanning; short memory; and sleep disturbance.   Ms. Osmanagic opined that plaintiff was seriously limited but not precluded in his ability to understand, remember and carry out detailed instructions but that plaintiff was unable to deal with stress of semiskilled and skilled work.   Ms. Osmanagic further opined that plaintiff had limited but satisfactory abilities to interact appropriately with the general public and maintain socially appropriate behavior, and had unlimited ability to use public transportation and adhere to basic standards of neatness and cleanliness.   With respect to plaintiff's mental abilities to perform unskilled work, Ms. Osmanagic expressed no opinion.  (Tr. 5-7.)  In summary, Ms. Osmanagic reported:

> Some short term memory loss.  Post trauma stress [and] exposure to torture [and] trauma intensifies daily stress, especially high stress of work place, response to stress heightened [and] causes [increase] in symptoms.
>
> . . .
>
> Client is lacking confidence in his ability to do work, excessive worry over working with people caused by both trauma and intrusive memories and the possibility that he may have a seizure.  Stress then increases symptom can cause a "fight or flight" response.
>
> . . .
>
> Client suffers from disturbed sleep.  Without decent sleep he is unable to cope with stress effectively.  He reports nightmares and intru-

- 7 -

sive memories that impair his functioning.

(Tr. 8-9.)

### III.   The ALJ's Decision

In his written decision dated October 15, 2010, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.  The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, that is, since February 15, 2009.  The ALJ found plaintiff's impairments of epilepsy and depression to constitute severe impairments, but that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1.  (Tr. 18.)

The ALJ determined plaintiff to have the RFC to perform the full range of work at all exertional levels but with the following limitations:

> The claimant can never climb ropes, ladders, or scaffolds.  The claimant must avoid concentrated exposure to hazards, such as heights and machinery.  In addition, the claimant can only occasionally balance and stoop.  The claimant can understand, remember, and carryout [sic] at least simple instructions and non-detailed tasks, demonstrate adequate judgment to make simple work related decisions, adapt to routine simple work changes, and perform repetitive work according to set procedures, sequence, and pace.

(Tr. 20.)

- 8 -

In making this RFC determination, the ALJ accorded little weight to the evidence obtained from Mr. Sieben inasmuch as he is not an acceptable medical source. (Tr. 22.) The ALJ determined, however, to accord substantial weight to the RFC conclusions reached by "the physician employed by DDS" inasmuch as "there exist a number of other reasons to reach similar conclusions[.]" (Tr. 23.)

Based upon vocational expert testimony, the ALJ determined that plaintiff's RFC permitted him to perform his past relevant work as an office cleaner, envelope stuffer and chair assembler. The ALJ therefore found plaintiff not to be under a disability from February 15, 2009, through the date of the decision. (Tr. 23.)

## IV.  Discussion

To be eligible for Social Security Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, plaintiff must prove that he is disabled. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>Baker v. Secretary of Health & Human Servs.</u>, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§

- 9 -

423(d)(1)(A), 1382c(a)(3)(A).   An individual will be declared
disabled "only if his physical or mental impairment or impairments
are of such severity that he is not only unable to do his previous
work but cannot, considering his age, education, and work
experience, engage in any other kind of substantial gainful work
which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A),
1382c(a)(3)(B).

        To  determine  whether  a  claimant  is  disabled,  the
Commissioner engages in a five-step evaluation process.  See 20
C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42
(1987).  The Commissioner begins by deciding whether the claimant
is engaged in substantial gainful activity.   If the claimant is
working, disability benefits are denied.   Next, the Commissioner
decides whether the claimant has a "severe" impairment or
combination of impairments, meaning that which significantly limits
her ability to do basic work activities.   If the claimant's
impairment(s) is not severe, then he is not disabled.   The
Commissioner then determines whether claimant's impairment(s) meets
or equals one of the impairments listed in 20 C.F.R., Subpart P,
Appendix 1.  If claimant's impairment(s) is equivalent to one of
the listed impairments, he is conclusively disabled. At the fourth
step, the Commissioner determines the claimant's RFC and determines
whether the claimant can perform his past relevant work.  If so,
the claimant is not disabled.  If the Commissioner finds that the

- 10 -

claimant cannot do his past relevant work, the Commissioner then proceeds to the fifth step of the evaluation process whereby she considers the claimant's RFC, together with the claimant's vocational factors (age, education and work experience), and determines if the claimant can make an adjustment to other work. If the claimant can make such an adjustment, the claimant is found not to be disabled.  If the Commissioner finds the claimant unable to perform such other work, the claimant is determined to be disabled and becomes entitled to disability benefits.

          The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  Id. (internal quotation marks and citations omitted).

          To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the

Court must review the entire administrative record and consider:

    1.   The credibility findings made by the ALJ.

    2.   The plaintiff's vocational factors.

    3.   The medical evidence from treating and consulting physicians.

    4.   The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

    5.   Any corroboration by third parties of the plaintiff's impairments.

    6.   The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision. Coleman, 498 F.3d at 770; Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." Weikert v. Sullivan, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation

marks and citation omitted); see also Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003).

For the following reasons, this cause should be remanded to the Commissioner for proper consideration of all the evidence of record.

A.   Evidence Submitted to the Appeals Council

As noted, supra, additional evidence was submitted to the Appeals Council and is included in the record for judicial review. However, there is no indication in the administrative record as to whether the Appeals Council considered this evidence.  Indeed, in its Notice of Action, the Appeals Council states that the additional information it considered consisted only of plaintiff's representative's three-page brief, dated November 30, 2010.  (Tr. 4.)  Although in her brief here, the Commissioner represents to the Court that the Appeals Council considered this additional evidence, and specifically Ms. Osmanagic's August 2011 Mental RFC Questionnaire (Doc. #22 at p. 2), such representation is inconsistent with the Appeals Council's statement that it considered only plaintiff's November 2010 brief.  If the Appeals Council determined *not* to consider the additional evidence submitted by plaintiff, nothing in the record provides any explanation for such determination.

Where new and material evidence is submitted to the Appeals Council subsequent to the ALJ's decision,

- 13 -

the Appeals Council shall consider the
additional evidence only where it relates to
the period on or before the date of the
administrative law judge hearing decision.
The Appeals Council shall evaluate the entire
record including the new and material evidence
submitted if it relates to the period on or
before the date of the administrative law
judge hearing decision.

20 C.F.R. §§ 404.970(b), 416.1470(b).


The Regulations also provide:


The Appeals Council will consider all the
evidence in the administrative law judge
hearing record as well as any new and material
evidence submitted to it which relates to the
period on or before the date of the
administrative law judge hearing decision.  If
you submit evidence which does not relate to
the period on or before the date of the
administrative law judge hearing decision, *the
Appeals Council will return the additional
evidence to you with an explanation as to why
it did not accept the additional evidence and
will advise you of your right to file a new
application.*


20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) (emphasis added).

"Thus the Appeals Council *must* consider evidence submitted with a

request for review if it is '(a) new, (b) material, and (c) relates

to the period on or before the date of the ALJ's decision.'"

Bergmann v. Apfel, 207 F.3d 1065, 1069 (8th Cir. 2000) (quoting Box

v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995)).  Failure to consider

such evidence constitutes a basis for remand by a reviewing court.

- 14 -

Whitney v. Astrue, 668 F.3d 1004, 1006 (8th Cir. 2012); Box, 52 F.3d at 172; see also Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992).  "Whether evidence meets this criteria is a question of law . . . review[ed] *de novo*."  Bergmann, 207 F.3d at 1069.

Given the Appeals Council's silence in the instant case with respect to plaintiff's additional evidence, this Court cannot determine whether the Appeals Council considered such evidence in its determination to deny review of the ALJ's decision.  In like circumstances, the Eighth Circuit Court of Appeals has directed district courts to remand matters to the Appeals Council for a determination of whether the evidence is new, material and relates to the period on or before the ALJ's decision and, if these requirements are met, for consideration with all of the other evidence in the administrative record.  See Whitney, 668 F.3d at 1006-07; Lamp v. Astrue, 531 F.3d 629 (8th Cir. 2008); Gartman v. Apfel, 220 F.3d 918 (8th Cir. 2000).  In light of additional legal error committed by the ALJ in the instant cause, as discussed below, such remand is appropriate in the circumstances here.

B.   ALJ Error

The Commissioner has a duty to consider all of the available evidence in a claimant's record, including evidence from health care providers such as licensed clinical social workers and therapists, and non-medical sources such as counselors.  See Social Security Ruling (SSR) 06-3p, 2006 WL 2263437 (Soc. Sec. Admin. Aug.

9, 2006). Although such providers are not considered to be "acceptable medical sources," evidence therefrom may provide insight into the severity of a claimant's impairment and how his ability to function is affected thereby. Id. Here, the ALJ determined to accord little weight to evidence obtained from Mr. Sieben, a licensed clinical social worker, merely because he was not an "acceptable medical source." (See Tr. 22.) However, SSR 06-3p considers such providers to be valuable sources of evidence for assessing impairment severity and functioning inasmuch as they often have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairments, activities and level of functioning over a period of time. As such, to discount evidence from a licensed clinical social worker or other medical or non-medical source merely because they are not an "acceptable medical source" is contrary to the Regulations and constitutes error.

In addition, the ALJ's determination to accord substantial weight to the opinion of the DDS physician was likewise error. In his written decision, the ALJ cursorily referred to the RFC "conclusions" reached by "the physician employed by the DDS" and determined to accord such conclusions substantial weight. (Tr. 23.) A review of the record in its entirety shows, however, that no evidence, including opinion evidence, was obtained from a DDS *physician*. Instead, the only evidence obtained from a DDS employee

- 16 -

is a Case Analysis rendered by DDS counselor Danielle Fry, dated
September 23, 2009, in which she reports:

> 33 yr. old clmt alleging CC as of 02/15/09 due
> to seizures.  Evidence in file demonstrates
> the clmt having a hx of seizures as a child
> and being seizure free until 7/09.  The clmt
> is currently taking Dilantin for his seizure
> do.  He notes back pain, on recent exam, he
> had full ROM w/o spinal tenderness.  He has no
> MDI for his allegation of back pain.  The
> clmt's functional limitations could not be
> assessed as he failed to return his ADLs.
> Therefore, due to insufficient evidence, an
> unfavorable determination is rendered.

(Tr. 327.)[4]

Weighing the opinion of a lay person under the rules appropriate
for weighing the opinion of a medical source is legal error.  Dewey
v. Astrue, 509 F.3d 447, 449 (8th Cir. 2007).  The undersigned
cannot say that the ALJ's reliance on Ms. Fry's unqualified opinion
was harmless in light of the ALJ's near-blanket rejection of other
evidence of record for the sole reason that such evidence was not
obtained from an acceptable medical source.

Accordingly, this cause should be reversed and remanded
to the Commissioner for further consideration.  Upon remand, the
the Appeals Council should determine whether the evidence submitted
by the plaintiff subsequent to the ALJ's decision is new, material
and relates to the period on or before the ALJ's decision.  If so,

---

[4]The Commissioner appears to concede in her brief that this
Case Analysis rendered by Ms. Fry is that upon which the ALJ relied
in making his RFC determination.  (See Doc. #22 at p. 8.)

the Appeals Council should then proceed to consider such evidence with all of the other evidence in the administrative record. Upon review of such additional evidence, the Commissioner must be mindful of her duty to consider <u>all</u> of the available evidence in plaintiff's record including evidence from health care providers such as licensed clinical social workers and therapists, and non-medical sources such as counselors. In addition, the Commissioner is reminded that a determination as to plaintiff's RFC must be supported by some *medical* evidence in the record. <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 591 (8th Cir. 2004). The Commissioner is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses plaintiff's ability to function in the workplace. <u>Hutsell v. Massanari</u>, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). Opinions offered by non-medical lay persons are not *medical* evidence. 20 C.F.R. §§ 404.1513, 416.913.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Acting Commissioner of Social Security Carolyn W. Colvin is substituted for former Commissioner Michael J. Astrue as defendant in this cause.

**IT IS FURTHER ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**

- 18 -

and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.   Because the current record does not conclusively demonstrate that plaintiff is entitled to benefits, it would be inappropriate for the Court to award plaintiff such benefits at this time.

Judgment shall be entered accordingly.


_Frederick R. Buckles_

UNITED STATES MAGISTRATE JUDGE


Dated this  _5th_  day of August, 2013.

- 19 -